UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RODERICK HAYGOOD,

       Petitioner,

v.                                        Case No. 3:14-cv-641-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

       Respondents.

_____

## **ORDER**

### I. **Status**

Petitioner Roderick Haygood, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Petition, Doc. 1), which he later amended (Amended Petition, Doc. 4).  Haygood challenges a 2008 state court (Baker County, Florida) judgment of conviction for sale and delivery of cocaine, trafficking in hydrocodone, and unlawful use of a two-way wireless communication device.  Haygood also filed a supporting Memorandum of Law and Facts (Pet. Memorandum, Doc. 5).  Respondents filed a memorandum in opposition to the Amended Petition.  See Respondent's Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response, Doc. 15) with exhibits (Resp. Ex.).

On behalf of Haygood, counsel Jack R. Maro filed a notice of appearance (Doc. 17) on April 13, 2016, and an Unopposed Motion for Extension of Time in which to File a Response to Respondent's Answer to Petition for Writ of Habeas Corpus (Doc. 18).

Counsel asserted that Haygood's family had recently retained him, and he requested a sixty-day extension to file a reply because he needed to review 1,200 pages of documents and determine "what and what not must be addressed." Id. The magistrate judge granted the extension and directed counsel to file Haygood's reply by June 29, 2016 (Doc. 19). When counsel did not file a reply, the Court sua sponte extended the deadline initially to September 6, 2016 (Doc. 20), and again to October 21, 2016 (Doc. 21). When counsel still failed to file a reply, the Court issued an order on November 7, 2016, announcing that it would treat the matter as ripe for review, as it appeared that Haygood did not intend to file a reply (Doc. 22). As such, this case is ripe for review.

## II. Procedural History

On November 15, 2007, the State of Florida charged Haygood by information with three offenses: count one - sale of a controlled substance (cocaine); count two - trafficking in illegal drugs (hydrocodone, twenty-eight grams or more); and count three - unlawful use of a two-way communication device (a cellular phone). See Resp. Ex. A at 6-7. On July 18, 2008, a jury found Haygood guilty as to all three counts. See Resp. Ex. A at 31-32; Resp. Exs. C, D, E. The court sentenced Haygood to fifteen years imprisonment on count one, twenty-five years imprisonment on count two to be served as a minimum mandatory of twenty-five years, and five years imprisonment on count three, with all sentences to run concurrently with each other but consecutive to any other active sentences Haygood was already serving. Also, the court recognized 382 days credit for time served on each count. See Resp. Ex. A at 55-65; Resp. Ex. G.

With the benefit of counsel, Haygood appealed his conviction to the First District Court of Appeal. See Resp. Ex. I. The State filed an answer brief (Resp. Ex. J). On

September 17, 2009, the First District Court of Appeal affirmed Haygood's conviction and sentence per curiam without issuing a written opinion. Haygood v. State, 18 So. 3d 532 (Fla. 1st DCA 2009) (table); Resp. Ex. K. The mandate issued on October 5, 2009. Resp. Ex. L.

Haygood filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Resp. Ex. M at 1-24. On May 10, 2012, the trial court summarily denied the motion by written opinion with attachments. Id. at 26-148. Haygood appealed the denial of relief to the First District Court of Appeal. See Resp. Ex. N. The State filed a notice that it would not file an answer brief. See Resp. Ex. O. The First District Court of Appeal per curiam affirmed the trial court's denial of Haygood's motion on November 27, 2013. See Resp. Ex. P. The mandate issued on December 26, 2013. Resp. Ex. Q. Haygood v. State, 127 So. 3d 506 (Fla. 1st DCA 2013) (table).

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court.

Because this Court can "adequately assess [Haygood's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Exhaustion and Procedural Default

### A. Exhaustion

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""'opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

## B. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile,'" a procedural default occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). In such circumstances, federal habeas review of the claim is typically precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward, 592 F.3d at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

"When a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial." Martinez

v. Ryan, 566 U.S. 1, 14 (2012).   However, the "prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citing Miller-El v. Cockrell, 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue)); see also Trevino v. Thaler, 133 S. Ct. 1911, 1914 (2013).   This narrow exception to the procedural default rule

> applies only where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim.

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017) (emphasis in original) (citations omitted); see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 724.  This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)).  Additionally, "'[t]o be credible,' a claim of actual innocence

must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088,

1096 (2013).[1]  Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits.  See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 98.  As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions.  As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause.  The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. at 413, 120 S. Ct. at 1523 (plurality opinion).  The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations.  Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an

[1] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely."  Richter, 562 U.S. at 99-100; see also Williams, 568 U.S. at --, 133 S. Ct. at 1096-97.  However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances."  Williams, 133 S. Ct. at 1096.

> unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments

---

[2] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); see also Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones v. Walker, 540 F.3d at 1277, 1288 n.5.

or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017). However, in Wilson, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court.[3] 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [Woods v. Donald, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 134 S. Ct. at 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102.

---

[3] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

## VI.  Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other."  <u>Ward</u>, 592 F.3d at 1163.  Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)).  As

stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Haygood asserts that trial counsel provided ineffective assistance by failing to object to the prosecutor's closing argument and the trial court's jury instruction

regarding the principal theory of guilt because the state failed to charge the principal theory in the information.  <u>See</u> Amended Petition at 4-5; Pet. Memo. at 2.  Respondents contend that Haygood failed to exhaust this claim in the state courts.  <u>See</u> Response at 9-12.  Haygood contends that the Court should excuse his failure to exhaust this ground because he was not represented by counsel in his state postconviction proceedings.  <u>See</u> Pet. Memo. at 2 (citing <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012) and <u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013)).

To overcome the procedural default, Haygood must show that his "underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that [he] must demonstrate that [his] claim has some merit."  <u>Martinez</u>, 566 U.S. at 14.  Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support."  <u>Id.</u> at 16.  Here, Haygood's <u>Strickland</u> claim is insubstantial because it lacks both factual support and merit.  Contrary to Haygood's assertions, trial counsel did object during the charge conference to the inclusion of a jury instruction on the principal theory of guilt.  <u>See</u> Resp. Ex. E at 233-34.  The trial court overruled his objection and included the instruction.  <u>Id.</u>  Given the trial court's ruling, Haygood's counsel had no grounds on which to object to the prosecutor's closing argument.  Because Haygood's contention that trial counsel performed deficiently lacks factual support and is meritless, Haygood's <u>Strickland</u> claim is insubstantial, and <u>Martinez</u> does not apply to excuse his default.  The claim in Ground One is due to be denied as unexhausted and procedurally defaulted.

## B. **Ground Two**

As Ground Two, Haygood asserts that trial counsel provided ineffective assistance by failing to file a notice of expiration of speedy trial time in accordance with Florida law.[4] See Amended Petition at 6; Pet. Memo. at 2-3. Respondents contend that Haygood failed to exhaust this claim in the state courts. See Response at 12-16. Haygood asserts that the Court should excuse his failure to exhaust this ground under Martinez and Trevino because he was not represented by counsel in his state postconviction proceedings. See Pet. Memo. at 2.

Again, Haygood fails to show that his Strickland claim is substantial. The record reflects that Haygood, through counsel, waived his right to a speedy trial by moving to continue the trial.[5] See Resp. Exs. H1 at 3-6; H2 at 4. As such, trial counsel did not perform deficiently by failing to file a notice of expiration of speedy trial time, and Haygood's claim lacks factual support and merit. He cannot rely on Martinez to excuse his default. The claim in Ground Two is due to be denied as unexhausted and procedurally defaulted.

## C. **Ground Three**

As Ground Three, Haygood asserts that trial counsel provided ineffective assistance by failing to file a timely amended motion for new trial based on juror misconduct. See Amended Petition at 7-8; Pet. Memo. at 4. Haygood exhausted this claim by raising it as

---

[4] See Florida Rule of Criminal Procedure 3.191.

[5] During a pre-trial case management conference on February 4, 2008, defense counsel asked the trial court to set the case for "case management 30 days out" in order to meet with Haygood to review his discovery. See Resp. Ex. H1 at 4. Counsel's request was effectively a motion to continue, as counsel confirmed on March 17, 2008. See Resp. Ex. H2 at 4.

ground one of his state postconviction motion.  See Resp. Ex. M at 3-6; see also

Response at 17.  After reciting the Strickland standard for ineffective assistance of

counsel, the trial court denied this claim as follows:

> Defendant alleges that trial counsel was ineffective for failing to file a timely amended motion for new trial based on two jurors' failure to disclose their criminal traffic history during jury selection.  According to Defendant, one of the jurors, Ronald Craig, has two prior convictions for DUI; and, the other (Randall Godbold) has a previous arrest for driving without a license (for which adjudication was withheld).  Defendant has attached documentation supporting his allegation.  Defendant notes that another juror was removed during jury selection for failing to disclose his prior DUI.  See Jury Selection Transcript at 30 (lines 21-25) – 31 (lines 1-5), 91 (lines 4-25) – 92 (lines 1-7), 102 (lines 1-25) – 104 (lines 1-3).  According to Defendant, had the court been made aware of Craig and Godbold's failure to disclose in a timely motion for new trial, he would have been granted a new trial based on their failure to disclose their criminal history.

> Generally, a new trial will not be granted due to a juror's nondisclosure of facts, unless those facts are considered material.  Murray v. State, 3 So. 3d 1108, 1121-22 (Fla. 2009) (citing McCauslin v. O'Conner, 985 So. 2d 558, 561 (Fla. 5th DCA 2008)).  A juror's nondisclosure of information during voir dire is considered material if it is so substantial that, if the facts were known, the defense likely would peremptorily exclude the juror from the jury.  Id.  Even if material, the discovery of nondisclosure will warrant a new trial only if (1) the facts are relevant to the juror's service; (2) they were intentionally concealed on voir dire; and (3) the complaining party's failure to discover the concealed facts was not due to his own lack of diligence.  Id. at 1122.

> Here, counsel did move for a new trial once he discovered the two jurors' criminal history.  See Amended Motion for New Trial; Motion to Interview Jurors.  However, the motions were denied as untimely filed and not addressed on the merits.  See Order Denying Motion to Interview Jurors; Order Denying Amended Motion for New Trial.

> Even if the motion for new trial had been timely filed, it would not have been granted.  First, both jurors had only

> misdemeanor criminal traffic cases (and only Mr. Craig had a conviction). The instant case involved drug trafficking. Their prior criminal history was not relevant to the facts of Defendant's case. Second, there is no indication from the record that they intentionally concealed their criminal history. The latter of Mr. Craig's two convictions for DUI was in 1994, 14 years prior to his jury service in this case. And, Mr. Godbold only had a withhold of adjudication, not a conviction. Furthermore, even the juror who was excused, Mr. Watts, indicated to the court that he thought the court was asking only about felonies, not DUI's. Finally, both of these jurors' criminal histories were as available to the parties as that of Mr. Watts. Because Defendant has failed to show either error by counsel or prejudice, the claim raised is without merit.

See Resp. Ex. M at 29. The First District Court of Appeal affirmed Haygood's conviction and sentence per curiam without issuing a written opinion. See Resp. Ex. P.

The Court affords the state court decision the deference it is due under §2254(d). See Butts, 850 F.3d at 1204 (citing Richter, 562 U.S. at 100). Because reviewing the state trial court's decision denying relief leads to the same conclusion under §2254(d) as reviewing the First DCA's affirmance, the Court will review the state trial court's written explanation for its rejection of Haygood's claim.[6] See Butts, 850 F.3d at 1204 & 1205, n.2. Applying the deference the Court owes state courts under AEDPA, the Court asks "whether any fairminded jurist could agree with the state trial court's decision denying [Haygood] habeas relief." Id. at 1205 (citations omitted). "If some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." Id. (quotations and citation omitted).

---

[6] Where "it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with [the] Wilson decision," the federal habeas court may apply § 2254(d) by deferring to "the more state-trial-court focused approach." Butts, 850 F.3d at 1204.

Applying state law, the state postconviction court concluded that the state trial court would not have granted the motion for a new trial based on the jurors' nondisclosures, even if counsel had filed it in a timely fashion.  See Resp. Ex. M at 29.  As such, Haygood failed to demonstrate deficient performance or prejudice on his Strickland claim.  The Court agrees.  In addition to the reasons articulated by the state postconviction court, the Court notes that a juror's "positioning as a prior defendant makes bias against [the current defendant] especially unlikely."  Johnston v. State, 63 So. 3d 730, 739 (Fla. 2011) (emphasis in original) (citing Garnett v. McClellan, 767 So. 2d 1229, 1231 (Fla. 5th DCA 2000) (finding that prior litigation experience was immaterial, in part, because the juror had been similarly situated to and was therefore more likely to be sympathetic to the complaining party)).  Even if Haygood and his counsel had known of the jurors' prior status as defendants in misdemeanor traffic cases, they likely would not have peremptorily excluded them from the jury.[7]  As such, the state trial court would not have granted the motion for new trial under state law, even if counsel had timely filed the motion.

The state trial court's order denying relief is neither contrary to nor an unreasonable application of Strickland because Haygood cannot demonstrate deficient performance or prejudice from counsel's failure to file a timely motion for new trial based on the jurors' nondisclosures.  Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The claim in Ground Three is due to be denied.

---

[7] Indeed, although a third juror was stricken for cause because the trial court discovered that he had failed to disclose a prior conviction for driving under the influence, the defense implied that it would not have excluded him on that basis when counsel acknowledged that it would be futile to try to rehabilitate the juror without embarrassing him in front of the jury panel.  See Resp. Ex. C at 63-66; 91-92; 102-04.

## D.  **Ground Four**

As Ground Four, Haygood asserts that trial counsel provided ineffective assistance by failing to object or suppress two detectives' lay-opinion testimony identifying the voice on the recording as Haygood's.  <u>See</u> Amended Petition at 9-10; Pet. Memo. at 4.  Haygood exhausted this claim by raising it in ground two of his state postconviction motion.  <u>See</u> Resp. Ex. M at 6-8.  After reciting the <u>Strickland</u> standard for ineffective assistance of counsel, the trial court denied relief on this claim as follows:

> Defendant alleges that trial counsel was ineffective for failing to object and move to suppress taped two-way conversations recorded by law enforcement and introduced by the State at trial.  According to Defendant, counsel should have prevented the two deputies from testifying at trial that they recognized his voice on the recorded calls.  Had counsel moved to suppress this testimony or objected to it at trial, it would have been denied.  Detective Rhoden and Lt. Bryant's testimony was admissible to prove the identity of the person that he heard speaking with the informant by means of the wire.  <u>Barrientos v. State</u>, 1 So. 3d 1209, 1213 (Fla. 2d DCA 2009); <u>see</u> <u>also</u> <u>England v. State</u>, 940 So. 2d 389, 401 (Fla. 2006); <u>Cason v. State</u>, 211 So. 2d 604, 604 (Fla. 2d DCA 1968).  The credibility of this evidence was a question for the jury.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Worley v. State</u>, 263 So. 2d 613, 613 (Fla. 4th DCA 1972).  Because counsel did not err by failing to move to suppress or object to this testimony, Defendant's claim is without merit.

<u>See</u> Resp. Ex. M at 29-30.  The First District Court of Appeal affirmed the trial court per curiam without opinion.[8]  <u>See</u> Resp. Ex. P.

Essentially, the state postconviction court concluded that counsel did not perform deficiently because any objection would have been denied as meritless under state law.

---

[8] On appeal, Haygood asserted that the trial court erred by misinterpreting state law regarding the admissibility of lay opinion testimony to establish identity through voice identification.  <u>See</u> Resp. Ex. N.

When considering counsel's performance, the Court affords double deference to the state postconviction court's decision.[9]  See Daniel, 822 F.3d at 1262.

According to the Florida Supreme Court,

> [t]his Court has held that testimony that a lay witness recognizes a voice as belonging to the accused is admissible as proof of identity.  England v. State, 940 So. 2d 389, 400-01 (Fla. 2006).  However, testimony that a witness recognizes the voice of the accused is inadmissible on the basis that it invades the province of the jury unless the testifying witness (1) was an eyewitness to the crime, (2) has some prior special familiarity with the voice of the defendant, or (3) is qualified as an expert in identification.  See, e.g., Charles v. State, 79 So. 3d 233, 235 (Fla. 4th DCA 2012); Ruffin v. State, 549 So. 2d 250, 251 (Fla. 5th DCA 1989).

Evans v. State, 177 So. 3d 1219, 1229 (Fla. 2015); see also Chesser v. State, 30 So. 3d 625, 628 (Fla. 1st DCA 2010) ("[L]ay opinion as to identity of a person is admissible when it is shown that the witness had a previous personal acquaintance with or knowledge of' the person identified and 'bases his opinion upon such acquaintance or knowledge.") (quotations and citations omitted); cf. Edwards v. State, 583 So. 2d 740, 741 (Fla. 1st DCA 1991) (reversing conviction because officer, who did not witness a videotaped controlled buy firsthand, testified "he recognized appellant as the person shown on the tape making the sale to" the informant); Ruffin v. State, 549 So. 2d 250, 251 (Fla. 5th DCA 1989) (finding error in admission of testimony that the person in the videotape was the defendant when the officers had not witnessed the crime or seen the defendant prior to viewing the videotape).

---

[9] In addition to the deference required by § 2254(d), the Court applies a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  See Richter, 562 U.S. at 104; Strickland, 466 U.S. at 689.

Detective Rhoden testified that he knew both Mark Belford and Haygood prior to this incident.[10]

> PROSECUTOR:      Did you know Mr. Belford before this?
>
> DET. RHODEN:      Yes, I did.

See Resp. Ex. D at 64-65.

> DEFENSE COUNSEL:      Investigator Rhoden, let's just start out with this. You know Mr. Belford, you know the gentleman that you ultimately arrested, you knew him before this day?
>
> DET. RHODEN:      I knew both of them, yes, sir.

Id. at 82.  From his testimony, the trial court could have accepted that Detective Rhoden was already familiar with their voices.  Consequently, the state postconviction court's conclusion that the trial court would have denied any objection to the admission of Rhoden's voice-identification testimony was objectively reasonable.  Applying double deference, the Court finds that the state postconviction court's conclusion that counsel did not perform deficiently was consistent with Strickland.

In addition, Detective Rhoden testified on direct examination as follows:

> PROSECUTOR:      Now, following that arrest, the arrest of the individuals that you've spoken of, did you have a chance to speak to both individuals?
>
> DET. RHODEN:      Yes, I did.
>
> PROSECUTOR:      You had a chance to speak with Mr. Haygood, the defendant?
>
> DET. RHODEN:      Yes, I did.
>
> PROSECUTOR:      Okay.  The voice that was on the recording devices, the voice that was on the telephone, did you recognize that voice?

---

[10] Mark Belford was the only other person in the car with Haygood at the time of arrest.

DET. RHODEN: Yes, I did.

PROSECUTOR: After speaking with Mr. Haygood?

DET. RHODEN: Yes, I did.

PROSECUTOR: Whose voice was that?

DET. RHODEN: There's no doubt it's Mr. Haygood's voice that on the phone recordings that we recorded with Miss Wisneski.

PROSECUTOR: Now, you indicated you knew Mr. Belford?

DET. RHODEN: Yes.

PROSECUTOR: You also had a chance to speak with him after the arrest?

DET. RHODEN: Yes, sir.

PROSECUTOR: Okay. Was he interviewed?

DET. RHODEN: Yes, he was.

PROSECUTOR: Did you hear that interview?

DET. RHODEN: Yes. I watched it.

PROSECUTOR: And can you positively say that the voice on the telephone was not Mr. Belford's?

DET. RHODEN: I'm positive that the voice on the phone call was Mr. Haygood, not Mr. Belford. I'm positive.

Id. at 65-67. Then, on redirect examination, the prosecutor revisited the voice identification with Detective Rhoden as follows:

PROSECUTOR: Now, we talked earlier about the voices on the telephone. Defense counsel was asking you a lot about the voices. Once again, you had an opportunity to talk to the defendant, correct?

> DET. RHODEN: I spoke with both of them, the defendant and Mr. Belford, both of them, yes.
>
> PROSECUTOR: And that was my next question. You had an opportunity to speak with Mr. Belford?
>
> DET. RHODEN: Yes.
>
> PROSECUTOR: Is there any doubt in your mind that that was Mr. Haygood's voice that you were hearing?
>
> DET. RHODEN: There's no doubt Mr. Haygood was on the phone. He was the one making the phone calls that we recorded. There's no doubt, after talking to both of them, that he is the one that was setting up the transaction for the deal.

Id. at 101-02.

Next, Lt. Bryant testified to his opinion that Belford's voice was not the voice on the recorded telephone calls.

> PROSECUTOR: Now, after everything is done, after arrests have been made, were you involved any further?
>
> LT. BRYANT: Yes, I was.
>
> PROSECUTOR: In what way? What did you do?
>
> LT. BRYANT: I interviewed the codefendant, Mark Belford, who was in the car.
>
> PROSECUTOR: You actually interviewed Mark Belford?
>
> LT. BRYANT: Yes.
>
> PROSECUTOR: Where did that interview occur?
>
> LT. BRYANT: At the sheriff's office annex.
>
> PROSECUTOR: You indicated earlier that you had an opportunity to listen in on the phone calls, and I take it you listened – also heard the voice at the final phone call where you were the only officer present, correct?
>
> LT. BRYANT: That's right.

> PROSECUTOR: Did you have a fair opportunity to compare the voice of Mark Belford to the voice that you had heard earlier on those other phone calls?
>
> LT. BRYANT: Yes, I did. Totally two different voices.
>
> PROSECUTOR: Totally two different voices?
>
> LT. BRYANT: Totally, no doubt. Totally two different voices.
>
> PROSECUTOR: So that was not Mark Belford on the phone then?
>
> LT. BRYANT: No, it was not.

Id. at 111-12. On cross-examination, Lt. Bryant confirmed that, talking to Belford, he was clear that Belford was not the voice on the phone. Id. at 115. Thus, Lt. Bryant's opinion excluded Belford (the only person in the car with Haygood) as the voice on the recordings. The state postconviction court's conclusion that counsel was not deficient for failing to make a meritless objection was consistent with Strickland and not objectively unreasonable.

Also, Haygood's ineffective-assistance-of-counsel claim fails because he cannot demonstrate a reasonable probability that the jury would have found him not guilty had the trial court excluded the officers' testimony identifying his voice and excluding Belford's voice. The confidential informant identified the voice on the recorded telephone calls as belonging to Haygood. Id. at 129; see also id. at 141. The confidential informant testified that she recognized Haygood's voice from speaking with him previously, and she had no doubt that it was Haygood. Id. at 130; see also id. at 141.[11] Moreover, because Belford

---

[11] The confidential informant testified that a friend had introduced her to Haygood at her home approximately one month before the controlled buy. See Resp. Ex. D at 119, 121;

(the only other person in the car with Haygood) testified, the jurors had their own opportunity to compare Belford's voice with the voice they heard on the tapes and draw their own conclusions as to the identification of the voice on the tapes. As such, Haygood's <u>Strickland</u> claim also fails because he cannot demonstrate prejudice.

The state court's order denying relief is neither contrary to nor an unreasonable application of <u>Strickland</u> because Haygood cannot demonstrate deficient performance or prejudice resulting from counsel's failure to object to the officers' lay testimony regarding voice identification. Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The claim in Ground Four is due to be denied.

### E.  <u>Ground Five</u>

As Ground Five, Haygood asserts that trial counsel provided ineffective assistance by failing to move to suppress the evidence of cocaine based on the possibility of tampering by law enforcement. <u>See</u> Amended Petition at 15; Pet. Memo. at 4. He contends that although law enforcement seized 1.5 grams of cocaine, the laboratory report reflects only 0.7 grams of cocaine, and that counsel should have filed a motion to suppress based on the substantial discrepancy in weight. He also asserts a historical pattern of discrepancies between the weight of the drugs upon seizure and the weight at the laboratory by referring to a prior case. In his Memorandum, Haygood contends that the

---

Resp. Ex. E at 146. The friend had used the confidential informant's phone to call Haygood, and the confidential informant later saved the number in her contacts on her phone. <u>See</u> Resp. Ex. D at 121-23. A few days prior to the controlled buy, the confidential informant called Haygood from her telephone at the same number she had saved in her contacts. <u>Id.</u> at 123-25, 128. Thus, the confidential informant had previously spoken with Haygood in person and on the telephone.

introduction of such unreliable and/or false evidence impaired his right to a fair trial, citing

Giglio v. United States, 405 U.S. 150 (1972).  Haygood exhausted this claim by raising it

as ground three of his state postconviction motion.  See Resp. Ex. M at 9-10.  After

reciting the Strickland standard for ineffective assistance of counsel, the trial court denied

this ground as follows:

> Defendant alleges that trial counsel was ineffective for failing to move to suppress the cocaine based on the possibility of evidence tampering by law enforcement. According to Defendant, at the time of his arrest, the arresting officers found 1.5 grams of cocaine on him; however, when tested by the Florida Department of Law Enforcement (FDLE), only 0.7 grams of cocaine was determined to be present. See Arrest Mittimus; Trial Transcript at 162 (lines 1-11). Defendant contends that the only explanation for this discrepancy of 0.8 grams (which is less than an ounce) is tampering by law enforcement.  Thus, he argues, counsel should have filed a motion to suppress on this basis.

> Had counsel moved to suppress the cocaine on this basis, the motion would have been denied.  The difference in weight of the cocaine between Defendant's arrest and testing by FDLE is a fairly insignificant amount.  Furthermore, the FDLE report which was filed in this case indicates that 1.5 grams of suspected crack cocaine was received, but only .7 grams of that was actually cocaine.   See State's Supplemental Discovery Exhibit; FDLE Report.  There is no evidence of tampering in this case by law enforcement.

> This Court also notes the record in case number 02-2007-CF000008-A (which Defendant references in his motion).  In that case, the arresting officer testified that the weight (58 grams) of the evidence listed at the time of Defendant's arrest included the weight of the evidence bag. See Trial Transcript (case number 02-2007-CF-000008-A) at 31 (lines 15-25) – 32 (line 1).  In addition, the weight recorded at arrest was an approximate weight, not an exact weight.  Id. at 40 (lines 3-25) – 42 (lines 1-15).  The weight of the cocaine tested by FDLE did not include the weight of the evidence bag; and, was an exact weight.  Id. at 75 (lines 17-25) – 83 (lines 1-12).  Though the facts in that case are different than the facts in the

> instant case, the same logic applies regarding the differing weights.

> Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

<u>See</u> Resp. Ex. M at 30-31. The First District Court of Appeal affirmed the trial court per curiam without opinion.[12] <u>See</u> Resp. Ex. P.

Affording the state trial court decision deference under §2254(d), <u>see</u> <u>supra</u> at 16 (VII.C.), the Court finds that the state trial court reasonably determined the facts and reasonably applied <u>Strickland</u>. The Court agrees that because there was no evidence of tampering, the state trial court would have denied a motion to suppress. As such, counsel did not perform deficiently and no prejudice resulted. The state postconviction court's decision is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it does not result from an unreasonable determination of the facts. The claim in Ground Five is due to be denied.

### F. <u>Ground Six</u>

As Ground Six, Haygood asserts that trial counsel provided ineffective assistance by failing to object to the admission of the recorded telephone conversations. <u>See</u> Amended Petition at 16; Pet. Memo. at 4-5. He also contends that counsel was ineffective for failing to investigate whether the state had obtained an order authorizing interception of the

---

[12] On appeal, Haygood asserted that the trial court's characterization of the difference in weight as "a fairly insignificant amount" was erroneous given that the difference in weight was over 53%. <u>See</u> Resp. Ex. N at 12. Furthermore, he contended on appeal that the FDLE report attached the order neither supported the conclusion that a mixture weighing 1.5 grams contained only 0.7 grams of cocaine nor conclusively refuted Haygood's claim of ineffective assistance of counsel for failing to file a motion to suppress. <u>Id.</u> at 13. Citing <u>Rhodes v. State</u>, 981 So. 2d 1223 (Fla. 1st DCA 2008), Haygood asserted that there was a reasonable probability of tampering or a break in the chain of custody.

telephone communication. Underlying Haygood's claim is his contention that the state's evidence of recorded telephone conversations was illegally obtained. Haygood exhausted this claim by raising it as ground four of his state postconviction motion. See Resp. Ex. M at 10-12. After reciting the Strickland standard for ineffective assistance of counsel, the trial court denied this ground as follows:

> Defendant alleges that trial counsel was ineffective for failing to determine whether the State had obtained an order allowing them to intercept the phone calls between Defendant and the confidential informant. According to Defendant, had counsel determined that no such order had been issued, the recorded calls could have been suppressed. However, no such order is needed under the circumstances in this case. See § 934.03(2)(c), Fla. Stat. (2007); State v. Shaktman, 389 So. 2d 1045, 1046 (Fla. 3d DCA 1980) ("once th[e] predicate requirement for admissibility is met, the tape recording between the consenting party and the accused may be introduced into evidence, and the absence of a warrant or order, the lack of probable cause, and the nonexistence of exigent circumstances are all without significance"); see also Pittman v. State, 397 So. 2d 1205, 1206 (Fla. 1st DCA 1981). Here, the confidential informant testified at trial that she agreed to have her phone calls with Defendant recorded by law enforcement. See Trial Transcript at 125 (lines 8-25) – 130 (lines 1-10), 131 (lines 22-25) – 132 (lines 1-25) – 133 (liens 1-10), 134 (lines 13-25) – 135 (line 1), 139 (lines 12-25) – 140 (lines 1-22), 141 (lines 8-12), 152 (lines 4-25) – 153 (lines 1-9).

> Even if the calls had been suppressed, there was additional evidence presented at trial supporting Defendant's guilt to the charged offenses. See Trial Transcript at 123 (lines 5-25) – 141 (lines 1-12), 176 (lines 7-25) – 181 (lines 1-23), 195 (lines 5-25) – 212 (lines 1-23), 221 (lines 11-25) – 223 (lines 1-9). Accordingly, Defendant's claim is without merit.

See Resp. Ex. M at 31-32. The First District Court of Appeal affirmed the trial court per curiam without opinion. See Resp. Ex. P.

Affording the state trial court decision deference under §2254(d), see supra at 16 (VII.C.), the Court finds that the state trial court reasonably determined the facts and reasonably applied Strickland.[13]  The Court agrees counsel did not perform deficiently and no prejudice resulted.  As such, the state postconviction court's decision is not contrary to nor an unreasonable application of Strickland, and does not result from an unreasonable determination of the facts.  The claim in Ground Six is due to be denied.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Haygood seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Haygood "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

---

[13] The pertinent Florida statute, cited by the state postconviction court (see Resp. Ex. M at 31), specifically permits "an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act."  Fla. Stat. Ann. § 934.03(2)(c) (2007).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Haygood appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The **Clerk of the Court** is directed to close this case and terminate any

pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 11th day of July, 2017.


MARCIA MORALES HOWARD
United States District Judge

lc22
c:  Counsel of Record